UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT O'SHEA, CHAIRMAN OF THE WARD 6 DEMOCRATIC COMMITTEE, ET AL.,<br><br>            Plaintiffs,<br><br>v.<br><br>BOSTON CITY COUNCIL,<br><br>            Defendant. | Civil Action No. 1:220cv012048-PBS |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUCTION**

Now Come the Plaintiffs and respectfully submit this memorandum of law in support of Plaintiffs' Application for Preliminary Injunction against the Defendant Boston City Council pursuant to Fed. R. Civ. P. 65(b).

**I.      Facts**

This action relates to the Redistricting Plan (Docket #1275) that was approved by the Boston City Council on November 2, 2022.  This Redistricting Plan was motivated by a desire to achieve "racial balancing" between various Districts in the City of Boston.  Primarily, the goal was to make white-majority districts less white, and African-American majority districts less black.

In order to achieve the desired results, the City Council engaged in secretive and inaccessible meetings at which the citizens of the effected districts did not have sufficient access under the Open Meeting Law.  Specifically, language access was not provided to many language minority residents.  Also, the final Redistricting Plan was not provided to Councilors and the general public until less than 48 hours before the scheduled vote.

On November 2, 2022, the City Council voted 9-4 to approve the Redistricting Plan. A full recitation of the applicable facts is included in Plaintiffs' First Amended Complaint, filed herewith. Councilor Liz Breadon became the Char of Redistricting on August, 29, 2022.

II.  **Argument**

To determine whether a preliminary injunction should issue, the Court is to follow the three-step analysis laid out by the Supreme Judicial Court in Packaging Industries Group v. Cheney, 380 Mass. 609 (1980). First, the Court "evaluates in combination the moving party's claim of injury and chance of success on the merits." Id. at 617. Next, if the Court finds that failure to issue the order would subject the movant to "a substantial risk of irreparable harm," then the Court must then balance such harm against the injury to the nonmovant if the order is granted together with the nonmovant's chance of succeeding on the merits. Id. Lastly, the Court must balance the risk of irreparable harm to the movant against the injury to the nonmovant if the injunction is granted or denied with their respective chances of succeeding on the merits. Id. When the balance between these risks, together with their respective chances of success on the merits, "cuts in favor of the moving party" then a preliminary injunction should issue. Id.

A.  **Likelihood of Success on the Merits**

1. **The Open Meeting Law**

The Open Meeting Law, G. L. c. 39, §§ 23A-23C, was enacted by the Legislature because "It is essential to a democratic form of government that the public have broad access to the decisions made by its elected officials and to the way in which the decisions are reached." Foudy v. Amherst-Pelham Regional Sch. Comm., 402 Mass. 179, 184 (1988). The Supreme Judicial Court held that ""the general provision[s] of ... the Open Meetings Law are to be broadly and liberally construed in order to effectuate the legislative purpose of openness." General Elec. Co. v. Department of Envtl. Protection, 429 Mass. at 806 n.9, *quoting from* Cella, Administrative Law and Practice § 1186, at 592 n.16 (1986).

As described in the First Amended Complaint, and in <u>Exhibit J</u> thereto, the Boston City Council repeatedly violated the Open Meeting Law.  Specifically, meetings on October 10, 2022, October 18, 2022, and October 19, 2022 were not properly noticed.  "All meetings of a governmental body shall be open to the public." G. L. c. 39, § 23B, first par., as appearing in St. 1976, c. 397, § 6.  "[N]otice of every meeting of any governmental body shall be filed with the clerk of the city ... in which the body acts, and the notice or a copy thereof shall, at least forty-eight hours ... prior to such meeting, be publicly posted in the office of such clerk or on the principal official bulletin board of such city." G. L. c. 39, § 23B, sixth par.

These meetings (and presumably other secret meetings) were not properly noticed and did not give the public an opportunity to engage in the deliberative and legislative process.  Moreover, the City Council's failure to provide access to language minority residents (see <u>Exhibits F through I</u> attached to the First Amended Complaint) further limited public access to these governmental proceedings.

At least two Open Meeting Law complaints have been filed against the City Council in relation to these meetings (<u>Exhibits J and K</u>).  Despite these complaints, the City Council proceeded to a vote on the Redistricting Plan on November 2, 2022.  Alarmingly, the final proposed map (Docket #1275) was not provided to the other Councilors or to the public until less than 48 hours before the scheduled vote.

Throughout the process, the City Council has pushed to pass this unconstitutional and illegal Redistricting Plan without giving adequate notice of meetings, without providing meaningful access to language minority residents, and with secretive plans not revealed until the eleventh hour before the eventual vote.

For these reasons, the Plaintiffs respectfully request that this Honorable Court find that the City Council violated the Open Meeting Law.

**2. <u>The Voting Rights Act</u>**

Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, prohibits voting practices or procedures that discriminate on the basis of race, color, or membership in a language minority group. This prohibition applies nationwide to any voting qualification or prerequisite to voting or standard, practice, or procedure, including districting plans and methods of election for governmental bodies. <u>Growe v. Emison</u>, 507 U.S. 25, 39-40 (1993). Section 2 also prohibits adopting or maintaining voting practices for the purpose of disadvantaging citizens on account of race, color, or membership in a language minority group. <u>Chisom v. Roemer</u>, 501 U.S. 380, 394 n.21 (1991). "To prevail on a s. 2 claim, plaintiffs need not show discriminatory purpose; rather, they must first meet the three threshold <u>Gingles</u> conditions: (1) that they are a part of a minority group that is "sufficiently large and geographically compact to constitute a majority in a single-member district"; (2) that the plaintiff minority group is "politically cohesive"; and (3) that "the white majority votes sufficiently as a bloc to enable it - in the absence of special circumstances, such as the minority candidate running unopposed - usually to defeat the minority's preferred candidate." <u>Meza v. Galvin</u>, 332 F. Supp. 2d 52 (D. Mass. 2004), *quoting* <u>Thorburg v. Gingles</u>, 478 U.S. 30, 50-51 (1986).

There can be no doubt that District Four contains a minority group (African-Americans) that is sufficiently large and compact to constitute a majority in the District. The Redistricting Plan approved by the City Council effective splits District Four, transferring African-American votes out of the district and receiving primarily white votes in return. This "cracking" of a historically African-American district will result in the dilution of the African-American vote in that District and critically endanger the opportunity to elect the minority's preferred representative.

As described more fully in the First Amended Complaint, the stated goal of the City Council was "racial balancing" of districts. In attempting to racially balance Districts 2, 3, and 4, the City Council has diluted the power of the African-American vote in what is currently District 4. As stated

4

above, Plaintiffs need not show that the City Council intended to discriminate against African-American voters, only that a dilution of the minority majority vote will occur as result of the redistricting.

For these reasons, Plaintiffs respectfully request that this Honorable Court enter an order finding that the Redistricting Plan approved by the City Council violates Section 2 of the Voting Rights Act.

### 3. The Fourteenth Amendment

The Fourteenth Amendment to the United States Constitution provides, in pertinent part that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The Equal Protection Clause prohibits a state, "without sufficient justification, from 'separat[ing] its citizens into different voting districts on the basis of race.'" Bethune-Hill v. Va. State Bd. of Elections, 137 S. Ct. 788, 797 (2017)  Race-based lines, therefore, are unconstitutional where (1) "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district," and (2) the district's design cannot withstand strict scrutiny. Miller v. Johnson, 515 U.S. 900, 916 (1995).  To pass strict scrutiny, the state must prove that its race-based redistricting scheme is "narrowly tailored" to meet a "compelling interest."  Bethune-Hill, 137 S. Ct. at 801.  As discussed hereinabove, the primary (if not the only) goal of the City Council was to engage in "racial balancing" of various districts.

In order to show a violation of the Equal Protection Clause , Plaintiffs must show "either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." Miller, 515 U.S. at 916.

"To make this showing, a plaintiff must prove that the legislature subordinated traditional race-neutral districting principles, including but not limited to compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests, to racial considerations." Id.

The City Council throughout the redistricting process has repeatedly claimed that the motivation for the Redistricting Map was "racial balancing". The express intent of the City Council should be determinative of the fact that the Redistricting Map was based primarily (if not solely) on racial considerations. Other evidence supports this outcome as well. The Boston City Charter provides that during redistricting "Each such district shall be compact and shall contain, as nearly as may be, an equal number of inhabitants as determined by the most recent state decennial census, shall be composed of contiguous existing precincts, and shall be **drawn with a view toward preserving the integrity of existing neighborhoods.**" Boston City Charter § 18 (emphasis added). G.L. c. 43 § 131 contains identical language. Similarly, the memorandum provided to the City Council by Professor Wice at their request states that such preservation of neighborhoods is a required criteria of redistricting. Exhibit O to Amended Complaint. Specifically, Prof. Wice states that "Consideration must be given to drawing districts that respect the boundaries of Boston's recognized neighborhoods." Id.

As discussed hereinabove and more fully in the Amended Complaint, the Redistricting Plan eviscerates the neighborhoods in Districts 2, 3, and 4. Mattapan and Dorchester are each effectively split in two, and South Boston loses neighborhoods that have been historically connected to District 2 for many years. The failure of the City Council to protect any of these neighborhoods belies their intent to redistrict solely based on race, and to ignore any other criteria.

Also, as described eloquently in Congressman Lynch's letter to the Court (Exhibit S to the Amended Complaint), the Redistricting Plan divides public housing developments, diluting the power

of public housing residents who share many things in common from pooling their power to elect their chosen representatives and to effect significant change.

Lastly, the City Council's reckless push for "racial balance" does not even achieve the goal it seeks.  Boston is a very diverse city, with many Hispanics, Vietnamese, Haitians, Cape Verdeans, Chinese, and various other significant minority groups.  However, the City Council's Redistricting Plan ignores the various minority groups, and instead focuses solely on a matter of white vs. non-white.  In doing so, the City Council has also uprooted and divided neighborhood of minority residents who collectively will suffer a diminution of their collective voting power if spread across multiple districts.

It is easy to see why the Fourteenth Amendment prohibits redistricting based on race except in the most extreme circumstances.  Although the City Council did need to shift some precincts to other districts in order to meet the population requirements of the City Charter, the proposed maps from Councilors Murphy, Flynn, Baker, and Flaherty all address the population shift without causing unnecessary damage to existing neighborhoods.

Because the City Council's Redistricting Plan is based primarily on race, the Plaintiffs respectfully request that this Honorable Court enter an order finding that the Redistricting Plan violates the Fourteenth Amendment.

B. **Irreparable Harm**

Plaintiffs face imminent and irreparable harm if the preliminary injunction is not granted.  As residents of the effected districts, the Plaintiffs are rightfully concerned about the Redistricting Plan and its effect on the integrity of existing communities, as well as the negative effect it will have on the political power and cohesiveness of its most vulnerable residents.  The deprivation of Plaintiffs' constitutional rights constitutes irreparable harm. T & D Video, Inc. v. City of Revere, 423 Mass. 577, 582 (1996).  Because Plaintiffs raise a substantial constitutional claim, no further showing of

irreparable harm is necessary. Id.; *see also, e.g.,* Coleman v. Bd. of Ed. of the City of Mt. Vernon, 990 F. Supp. 221, 226 (S.D.N.Y. 1997) ("the deprivation or dilution of voting rights constitutes irreparable harm.").

### C. Balance of Harms

There is no harm to the City Council that could result from the issuance of a preliminary injunction at this time. According to the City of Boston Corporation Counsel, the only explicit statutory deadline set forth in the Boston City Charter is that City Council districts be redrawn by August 1, 2026. The City Council has plenty of time to get this right.

On the other hand, the harms to the voters of the effected districts are severe. And constitutional deprivation is severe, but the damage done to the right to vote, a core right of American citizens, is as significant a harm as one can endure. Plaintiffs ask only that the City Council engage the community in the Redistricting Process and follow the Required Criteria in the City Charter to preserve the integrity of neighborhoods. Plaintiffs also ask that the City Council pursue redistricting in a race-neutral manner, with careful though given to the various communities affected by the redistricting process.

### III. Conclusion

For the foregoing reasons, Plaintiff respectfully requests this Court issue a preliminary injunction enjoining the Defendant Boston City Council from enacting the Redistricting Plan (Docket #1275) approved by the Boston City Council on November 2, 2022.

Respectfully submitted,
The Plaintiffs,
By their Attorneys,


/s/ Paul Gannon, Esq.
Paul Gannon, Esquire
Law Office of Paul Gannon, P.C.
546 E. Broadway
South Boston, MA 02127
(617) 269-1993
BBO# 548865
pgannon@paulgannonlaw.com


/s/ Glen Hannington
Glen Hannington, Esq.
LAW OFFICES OF GLEN HANNINGTON
Ten Post Office Square, 8th Floor South
Boston, MA  02109
TEL#:   (617) 725-2828
BBO#:   635925
glenhannington@aol.com


CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was filed through the ECF System and will be served upon the attorney of record for each party registered to receive electronic service on this the 12th day of January 2023.

/s/ Glen Hannington
Glen Hannington, Esquire