**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| RASHEED WALTERS, et al., | |
|     Plaintiffs, | |
|     v. | C.A. No.: 1:22-cv-12048-PBS |
| THE BOSTON CITY COUNCIL, et al. | Oral Argument Requested |
|     Defendants. | |

**MEMORANDUM IN SUPPORT OF THE MOTION BY THE NAACP BOSTON BRANCH, MASSVOTE, MASSACHUSETTS VOTER TABLE, LA COLABORATIVA, CHINESE PROGRESSIVE ASSOCIATION, AND NEW ENGLAND UNITED FOR <u>JUSTICE FOR LEAVE TO INTERVENE</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

PROPOSED INTERVENORS ................................................................................................. 5

ARGUMENT ......................................................................................................................... 7

    I.    Proposed Intervenors Are Entitled to Intervene as of Right in this Action .............. 7

        A.  The Motion to Intervene is Timely .................................................................. 8

        B.  Proposed Intervenors Have Direct Interests in this Case and a Disposition in Plaintiffs' Favor Would Impede Their Ability to Effectuate Them .................. 10

        C.  Defendants Do Not Adequately Represent Proposed Intervenors' Interests ...... 11

    II.    Alternatively, the Court Should Grant Permissive Intervention .............................. 13

CONCLUSION ....................................................................................................................... 14

CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2) ............................................. 15

CERTIFICATION OF SERVICE ........................................................................................... 15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                  **Page(s)**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.,*
    440 F.3d 541 (1st Cir. 2006) ...................................................................................11, 12

*Banco Popular de Puerto Rico v. Greenblatt,*
    964 F.2d 1227 (1st Cir. 1992) ..........................................................................................8

*Black Political Task Force v. Galvin,*
    300 F. Supp. 2d 291 (D. Mass. 2004)..............................................................................10

*Conservation Law Foundation of New England, Inc. v. Mosbacher,*
    966 F.2d 39 (1st Cir. 1992) ........................................................................................11, 12

*Daggett v. Comm'n on Gov. Ethics & Election Practices,*
    172 F.3d 104 (1st Cir. 1999) .........................................................................8, 10, 11, 13

*Geiger v. Foley Hoag LLP Retirement Plan,*
    521 F.3d 60 (1st Cir. 2008) ...........................................................................................8, 9

*Huot v. City of Lowell,*
    280 F. Supp. 3d 228 (D. Mass. 2017) .............................................................................13

*In Re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution,*
    712 F. Supp. 1019 (D. Mass. 1989) ................................................................................12

*Johnson v. Mortham,*
    915 F. Supp. 1529 (N.D. Fla. 1995).................................................................................10

*Mullane v. Portfolio Media, Inc.,*
    No. 19-11496-PBS, 2020 WL 1931525 (D. Mass. Feb. 28, 2020) ...................................7

*P.R. Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura,*
    637 F.3d 10 (1st Cir. 2011) ...............................................................................................9

*Public Citizen v. Liggett Group, Inc.,*
    858 F.2d 775 (1st Cir. 1988) .............................................................................................8

*Public Service Co. of N.H. v. Patch,*
    136 F.3d 197 (1st Cir. 1998) .....................................................................................10, 12

*State v. Director, U.S. Fish and Wildlife Serv.,*
    262 F.3d 13 (1st Cir. 2001) .......................................................................................11, 12

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    308 F.R.D 39 (D. Mass. 2015) ................................................................................9

*Ungar v. Arafat*,
    634 F.3d 46 (1st Cir. 2011) ...................................................................................7

*Worcester Interfaith v. City of Worcester*,
    4:21-cv-40015-TSH (D. Mass. 2021)....................................................................13

**<u>Statutes</u>**

Voting Rights Act,
    52 U.S.C. §§ 10101, et seq. ...................................................................1, 2, 3, 5, 9

**<u>Rules</u>**

Federal Rule of Civil Procedure 24(a).......................................................3, 7, 10, 14

Federal Rule of Civil Procedure 24(b) .........................................................3, 13, 14

# INTRODUCTION

By this motion, the NAACP Boston Branch, MassVOTE, the Massachusetts Voter Table, La Colaborativa, the Chinese Progressive Association, and New England United for Justice (the "Proposed Intervenors") respectfully request that the Court allow them to intervene as defendants in this lawsuit. No existing party represents the interest of Proposed Intervenors in protecting equal voting opportunity for Boston's communities of color. As a result, important issues are currently missing from this case—most notably the strong basis in evidence that requires the City to consider race in redistricting in order to comply with the Voting Rights Act ("VRA"). Allowing intervention will fill that gap and ensure that the interests of Proposed Intervenors are protected.

When the case was first removed to this Court in December 2022, Proposed Intervenors believed that their interests, and those of the diverse communities they serve, would be adequately represented by the City of Boston Defendants.[1] During the redistricting process in the Fall of 2022, multiple experts had made presentations on behalf of the City and highlighted for the City Council the significant issues that the City faces under the VRA. Most notably, the City's experts advised the City Council that "[v]oting is often racially polarized in Boston municipal elections, particularly in the preliminary elections."[2] This racial polarization, together with the size and compactness of Boston's communities of color, means that many map configurations will dilute the vote of communities of color and violate the VRA.

However, in their defense of the preliminary injunction motion, the City Defendants did almost nothing to explain these issues to the Court. As the Court highlighted in its Order granting

---

[1] Those Defendants include the Boston City Council, Mayor Michelle Wu, the City of Boston, and Eneida Tavares, in her capacity as Commissioner of the Boston Election Commission.

[2] Dr. Lisa Handley, *An Analysis of Voting Patterns By Race and an Assessment of Minority Voters' Opportunities to Elect Candidates in Recent Boston Municipal Elections* (ECF No. 25-1, Ex. D) ("Handley Analysis") at 19.

a preliminary injunction, the City Defendants called no City officials to testify in defense of the adopted map.  And they did little else to explain why City Councilors might have been focused on racial dynamics and demographics in drawing the challenged map.  The result was a one-sided record that showed City Councilors talking about race, but provided no explanation why.  On such a record, it can hardly be a surprise that the Court found in favor of Plaintiffs.

Since the Court's ruling, the City's capitulation to the Plaintiffs and its disregard for the import of the VRA have gotten even worse.  Less than a week after the Court tasked the City Council with redrawing the lines—and before it could hold a single hearing on the issue—Boston Mayor Michelle Wu publicized a proposed map (the "Mayor's Map").[3]  Drawn without public engagement or input, but with the apparent blessing of the Plaintiffs, the Mayor's Map was released late on Friday, May 12, 2023.  *See* Decl. of Tanisha Sullivan on behalf of the NAACP Boston Branch, attached as Ex. A, at ¶¶ 21, 27.  City Hall called on the City Council to adopt the map immediately.  *See id.* at ¶ 25.

The Mayor's Map would enact seismic changes, forcibly moving thousands of people into new districts and altering nearly every district in the City by haphazardly shifting dozens of precincts.  *See id.* at ¶¶ 30-31.  Compounding this havoc and upheaval, the Mayor's Map divides and eviscerates numerous neighborhoods populated by Black voters as well as other voters of color.  *See id.* at ¶ 29.  The significant voting rights issues that the City's experts flagged for the City Council in the Fall of 2022—but that have been entirely missing from the City's defense before this Court—are now front and center.  The City Defendants are now trying to "settle"

---

[3] Saraya Wintersmith, *Wu offers her own plan for redesigning City Council district boundaries*, GBH News (May 12, 2023), https://www.wgbh.org/news/politics/2023/05/12/wu-offers-her-own-plan-for-redesigning-city-council-district-boundaries.

this case with Plaintiffs, sidelining the Proposed Intervenors and the voters they represent, and ignoring the VRA's requirements. *See id.* at ¶ 27.

In light of these circumstances, Proposed Intervenors meet all of the requirements for mandatory intervention under Federal Rule of Civil Procedure 24(a)(2).  Alternatively, Proposed Intervenors request that they be granted permissive intervention under FRCP 24(b)(1), especially in light of the intense public interest of communities of color.   In a voting rights case in the City of Boston, Boston's communities of color should have both voice and legal representation.

## BACKGROUND

In November 2022, the City of Boston enacted a new City Council District Map (the "2022 Map") in response to population changes found in the 2020 decennial census.  The 2022 Map, which is the subject of this litigation, was created through an extensive community engagement process in the Boston City Council that included at least nineteen public hearings, hours of testimony from experts and residents, and numerous meetings with local advocacy groups.  (*See* ECF No. 25 at 3).  The Proposed Intervenors were among the groups that participated in the City Council's process.  *See* Sullivan Decl. at ¶ 11.  All of the Proposed Intervenors advocated throughout the process to protect the interests of voters of color in Boston. *See id.* at ¶ 12. Although the 2022 Map did not reflect all of their goals, the Proposed Intervenors supported the 2022 Map as a product of an open, deliberative community process. *See id.* at ¶ 14.

The City Council hearings also featured experts who made presentations on behalf of the City, who spoke about redistricting principles in general and in Boston, and who submitted written documents to the City Councilors.  Among the key points that these experts made is that there is significant evidence of "racial polarization" in Boston's voting patterns.  For example, a report from Dr. Moon Duchin noted that "in the 2021 Mayoral primary, Kim Janey [was] the clear

'candidate of choice' for POC [people of color] voters, and ha[d] nearly no support from White voters citywide."[4]   Another of the City's experts, Dr. Lisa Handley, submitted a similar report noting that: "[v]oting is often racially polarized in Boston municipal elections, particularly in the preliminary elections…."[5]   Dr. Handley also highlighted that racial polarization in elections, coupled with Boston's sizeable and compact population of residents of color, meant that City Councilors needed to be aware of voting rights concerns in drawing districts to avoid violating the Voting Rights Act.[6]

Following passage of the 2022 map, Plaintiffs filed the instant lawsuit in state court.   After the case was removed to this Court, Plaintiffs moved for a preliminary injunction, and the Court held a six-day hearing in March and April 2023.   Plaintiffs called multiple witnesses over four days.   However, when it came time for the City's defense, the City called no City officials or other fact witnesses to defend or explain the map.   It called only one expert witness, Dr. Moon Duchin, whose testimony focused largely on how the 2022 map meets districting principles such as "core retention."   The Court subsequently issued a preliminary injunction on May 8, 2023, finding that Plaintiffs had demonstrated a likelihood of success on one aspect of their case: "that a majority of Councilors relied on race as the predominant consideration in drawing the boundaries between Districts 3 and 4" in violation of the Equal Protection Clause.   (ECF No. 78 at 30).   In doing so, the Court specifically noted that the City's expert "did not conduct a *Gingles* analysis" (*id.*); that "[s]ignificantly, no City Councilor testified to explain the enacted map" (*id.* at 32); and

---

[4] *See* MOON DUCHIN & CHANEL RICHARDSON, INCREASING ELECTORAL OPPORTUNITY IN BOSTON CITY COUNCIL 2 (Oct. 25, 2022), at 2.
[5] Handley Analysis, *supra* note 2, at 19; *see also id.* at 8-14 (finding evidence of racial polarization in nearly half of City's 38 most recent elections).
[6] *See id.* at 2-3, 19.

"[c]ritically, the City Council did not provide a factual basis or expert analysis for its concerns" about potential VRA violations.  (*Id*. at 33).

Having enjoined use of the 2022 map, the Court held that the Council was best positioned to redraw the lines.  (*Id.* at 40).  As the Court put it, "[t]he ball is back in the City Council's Court." (*Id.* at 3).

Four days later, without any public hearings, Mayor Wu rolled out the Mayor's Map.  *See* Sullivan Decl. at ¶¶ 21, 23.  Since then, feedback from community groups has been discouraged—though Plaintiffs have apparently been consulted.  *See id.* at ¶ 24, 27.  City Hall claims that the Mayor's Map "unifies" neighborhoods.[7]  Although the Mayor's Map preserves traditionally white neighborhoods such as South Boston, it does so at the expense of Black voters and communities of color.  *See id.* at ¶ 33.   It also makes changes far beyond the limited geographical area on which the Court focused its inquiry (*i.e*., Districts 3 and 4) and raises significant VRA concerns in the process.

The City's priorities have drastically diverged from Proposed Intervenors', in ways that impair and impede the ability of Proposed Intervenors to protect the interests of their constituents, and of Boston's historically disenfranchised groups.

## PROPOSED INTERVENORS

This Court granted *amicus curiae* status to each of the Proposed Intervenors to defend the 2022 Map on February 16, 2023.  (*See* ECF No. 42).

**The NAACP Boston Branch ("NAACP")** is recognized as the first chartered branch of the National NAACP organization.  It works to ensure the political, educational, social and economic equality and rights of all persons and to eliminate racial hatred and racial discrimination

---

[7] Wintersmith *supra* note 3.

in the City of Boston.  *See* Sullivan Decl. at ¶¶ 2-3.  The NAACP has a long history of redistricting advocacy in Boston to ensure equitable representation at the community level, including substantial advocacy during the City Council's 2022 process.  *See id*. at ¶¶ 8-9.  The NAACP now seeks to intervene on behalf of itself and its thousands of members who are residents and voters in the City of Boston, including the communities of color split apart by the Mayor's Map.

**MassVOTE** is a non-profit voter advocacy organization that seeks to increase voter registration, education, and participation in historically underrepresented communities in Massachusetts to promote social, economic, environmental, and racial justice.  (*See* ECF No. 43 at 2).  Alongside the other Proposed Intervenors, MassVOTE dedicated time and resources to advocacy before the Boston City Council during the 2022 redistricting process to ensure equitable representation for voters of color in Boston.  *See* Sullivan Decl. at ¶ 12.

**The Massachusetts Voter Table (the "Voter Table")** is a non-profit organization that promotes civic access, engagement, and representation to increase resources and power for people of color and working-class people with the goal achieving a multiracial democracy.  (*See* ECF No. 43 at 2).  It strives to combat the kinds of racial injustice and economic inequality that undermine democracy in Massachusetts.  (*See id.*).  The Voter Table dedicated time and resources to advocacy before the Boston City Council during the 2022 redistricting process to ensure equitable representation for voters of color in Boston.  *See* Sullivan Decl. at ¶ 12.

**La Colaborativa** is a non-profit organization that delivers an array of programs, initiatives, and community organizing campaigns throughout Massachusetts that serve, protect, celebrate, and uplift Latinx immigrants.  (*See* ECF No. 43 at 2).  It dedicated time and resources to advocacy before the Boston City Council during the 2022 redistricting process to ensure equitable representation for voters of color in Boston.  *See* Sullivan Decl. at ¶ 12.

**The Chinese Progressive Association ("CPA")** is a non-profit organization that strives to achieve full equality and empowerment of the Chinese community in the Greater Boston area and beyond.  (*See* ECF No. 43 at 2).  CPA dedicated significant time and resources to advocacy before the Boston City Council during the 2022 redistricting process to ensure equitable representation for voters of color in Boston.  *See* Sullivan Decl. at ¶ 12.

**New England United for Justice ("NEU4J")** is a non-profit organization that organizes to promote social, economic, and racial justice in the Greater Boston Region.  (*See* ECF No. 43 at 2).  The group engages and empowers Boston families to improve worker's rights, childcare and housing access, and voter protections.  (*See id.*).  NEU4J dedicated significant time and resources to advocacy before the Boston City Council during the 2022 redistricting process to ensure equitable representation for voters of color in Boston.  *See* Sullivan Decl. at ¶ 12.

## ARGUMENT

### I.    Proposed Intervenors Are Entitled to Intervene as of Right in this Action

Proposed intervenors are entitled to intervention as of right because they satisfy the requirements of Federal Rule of Civil Procedure 24(a)(2).

The First Circuit has articulated a four-part test for intervention under Rule 24(a)(2).  The movant must show that: (1) "its motion is "timely"; (2) "it has an interest relating to the property or transaction" at issue; (3) "disposition of the action threatens to impair or impede its ability to protect this interest"; and (4) "no existing party adequately represents its interest." *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011).  As a general rule, a court "must approach the four-factor test holistically and keep a commonsense view of the overall litigation." *Mullane v. Portfolio Media, Inc.*, No. 19-11496-PBS, 2020 WL 1931525 at *3 (D. Mass. Feb. 28, 2020) (internal quotations omitted).  Proposed Intervenors amply satisfy each of the four factors here.

**A.  The Motion to Intervene is Timely**

Proposed Intervenors timely moved to intervene once it became clear that their interests would not be adequately protected by the City Defendants.  Moreover, the litigation is still in its early stages and, therefore, intervention would not prejudice any party.

Courts in this Circuit consider three factors in determining the timeliness of intervention: "1) the length of time the intervenor knew her interest was imperiled; 2) the foreseeable prejudice to the existing parties if intervention is granted, or to the intervenor if it is denied; and 3) any idiosyncratic circumstances which weigh for or against intervention." *Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 65 (1st Cir. 2008) (internal quotations omitted).  Timeliness depends on "the totality of the relevant circumstances" and "[o]ne highly relevant circumstance" is "the status of the case" at the time of the motion.  *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231-1232 (1st Cir. 1992).  Ultimately, courts take their measurement from the time "when the intervenor became aware that its interest in the case would no longer be adequately protected by the parties." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 785 (1st Cir. 1988).

At the outset of this action, Proposed Intervenors operated under the assumption that Defendants would vigorously defend the 2022 Map.  It is well-established that "the government in defending the validity of the statute is presumed to be representing adequately the interests of all citizens who support the statute." *Daggett v. Comm'n on Gov. Ethics & Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999).  Proposed Intervenors, therefore, initially participated as *amicus curiae* in support of Defendants.  *See* Sullivan Decl. at ¶¶ 15-16.

 It was only as the preliminary injunction evidentiary hearing unfolded that it became clear that Defendants would not sufficiently protect Proposed Intervenors' interests. *See id.* at ¶ 18-19.  As the Court noted in its preliminary injunction Order, Defendants called no City Councilors, or

any other fact witnesses, to testify in favor of the map.  (*See* ECF No. 78 at 2).  Instead, they allowed the Plaintiffs' witnesses to build the factual record and relied almost exclusively on one expert witness and one committee report to defend the 2022 Map.  (*Id.* at 29-31).  This anemic defense proved critical to the ultimate outcome.  Indeed, the Court emphasized that it was granting the injunction "on this record."  (*Id.* at 34).  It also noted as significant that "no City Councilor testified to explain the enacted map"; that the committee report did not rebut key parts of Plaintiffs' argument; and that the City presented no expert evidence to explain the City Council's VRA concerns.  (*Id.* at 30, 32).  The City's actions since the hearing, including the roll-out of the problematic Mayor's Map, have made even more clear that Defendants are unable or unwilling to adequately defend the interests of Proposed Intervenors.

Proposed Intervenors are filing this Motion expeditiously—ten days after the Court's preliminary injunction ruling and less than a week following the release of the Mayor's Map. Where, as here, the case is still in the early stages and little-to-no discovery has taken place, Proposed Intervenors have moved swiftly from their realization of jeopardy and avoided any prejudice to the parties.  *See P.R. Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura*, 637 F.3d 10, 13-14, 16 (1st Cir.  2011) (finding intervention timely where, after the court entered judgment early in the litigation, the intervenors sought to intervene 10 weeks from receiving notice of their jeopardized interests), *Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 64-65(1st Cir. 2008) (holding that intervenor had not moved untimely where she did so within two months of realizing her interests were imperiled and case was still in "initial stages"); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D 39, 46 (D. Mass. 2015) (finding intervention timely where intervenor waited five months to file and the case was "in the

very early stages of discovery"). Under the totality of the circumstances, this Motion is therefore timely.

### B. Proposed Intervenors Have Direct Interests in this Case and a Disposition in Plaintiffs' Favor Would Impede Their Ability to Effectuate Them

Proposed Intervenors also satisfy the second and third factors of the Rule 24(a)(2) test. With regard to the second factor, the First Circuit has explained that the "interest" required to intervene under Rule 24(a)(2) eludes "precise and authoritative definition." *Public Service Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998). A movant need only show that "it has a significantly protectable interest … that is direct, not contingent." *Id.* (internal quotations omitted). Then, at the third step, the applicant must show that an unfavorable disposition "may as a practical matter impair or impede" their "ability to protect that interest." *Daggett*, 172 F.3d at 110.

Proposed Intervenors have direct interests in the present case. They represent voters of color across Boston. *See* Sullivan Decl. at ¶¶ 6, 12. That representation includes voters who reside in Districts 3 and 4 as drawn in the 2022 Map—the primary districts at issue. *See id.* at ¶ 7. Proposed Intervenors, their members, and their constituents have direct stakes in: the Map they supported during the 2022 process, ensuring equitable representation for voters of color, maintaining opportunity districts, and defending the lines of the districts in which those members and constituents live. *See id.* at ¶ 34. All of these interests are especially important in light of past disenfranchisement. *See*, *e.g.*, *Black Political Task Force v. Galvin*, 300 F.Supp. 2d 291, 294 (D. Mass. 2004) (finding state legislative redistricting map diluted voting power of Boston-area Black voters in violation of the Voting Rights Act). They are also cognizable under Rule 24(a)(2). *See Johnson v. Mortham*, 915 F.Supp. 1529, 1538 (N.D. Fla. 1995) (finding that NAACP had a "protectable legal interest" in challenge to redistricting map where it represented voters in

challenged district and sought to intervene as a defendant in support of the challenged map).  Thus, Proposed Intervenors have direct interests here.

Proposed Intervenors satisfy the third factor as well.  As a practical matter, an unfavorable disposition of this action—whether that comes via settlement, the Mayor's Map, court-ordered line-drawing, or a permanent injunction—would harm all of the interests set forth above.  As the recent release of the Mayor's Map amply demonstrates, rulings in favor of Plaintiffs' claims make all of the City Council districts immediately subject to adverse changes, including those that reduce equitable representation in Boston.  A disposition in favor of Plaintiffs would impede Proposed Intervenors' ability to protect their interests and the interests of their constituents, including Black voters.

### C.  Defendants Do Not Adequately Represent Proposed Intervenors' Interests

Particularly in light of what has already transpired in this litigation, Proposed Intervenors have more than carried their burden to show that Defendants may not adequately represent their interests.  *See Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (noting that would-be intervenor "need only show that representation *may* be inadequate, not that it is inadequate") (emphasis added).

As noted above, when the government is defending a legislative enactment, it is "presumed" to be doing so "adequately."  *Daggett*, 172 F.3d at 111.  However, that "'[p]resumption' means no more in this context than calling for an adequate explanation as to why what is assumed—here, adequate representation—is not so."  *State v. Director, U.S. Fish and Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001).  To overcome it, a movant "ordinarily must demonstrate adversity of interest, collusion, or nonfeasance."  *Daggett*, 172 F.3d at 111.  But this "trilogy of grounds … is only illustrative."  *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440

F.3d 541, 546 (1st Cir. 2006).  "The facts of these cases vary greatly and whether the proposed intervenors' explanation of inadequacy suffices must be determined 'in keeping with a commonsense view of the overall litigation.'"  *U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001) (quoting *Patch*, 136 F.3d at 204).

The first major reason why Defendants may not adequately represent Proposed Intervenors' interests is the paucity of their defense at the April evidentiary hearing described *supra*.  Failing to call even a single fact witness or respond to critical parts of Plaintiffs' case demonstrates that Defendants have already failed to adequately defend the 2022 Map and, consequently, Proposed Intervenors' interests.  Subsequent events, including apparent settlement talks with the Plaintiffs and their backers and the roll-out of the Mayor's Map, to which Proposed Intervenors are staunchly opposed, make the failure of adequate representation even more plain.  *See* Sullivan Decl. at ¶ 27; *Mosbacher*, 966 F.2d at 44 (noting that "evidence that parties are 'sleeping on their oars' or 'settlement talks are underway' may be enough to show inadequacy") (citation omitted).

It is now apparent that Proposed Intervenors' ultimate goals in this litigation diverge significantly from the City's.  The dramatic changes in the Mayor's Map demonstrate that the City is no longer attached in any way to the 2022 Map, and the changes raise significant questions about the City's commitment to compliance with the Voting Rights Act.  *See* Sullivan Decl. at ¶ 34. Such an interest gulf strongly supports a finding that Defendants can no longer carry the Proposed Intervenors' torch.  *See Kellogg USA, Inc.*, 440 F.3d at 546 (endorsing the proposition that differences in the "kind" or "intensity" of interest "can prevent a named party from representing the interests of the absentee"); *In Re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1019, 1024 (D. Mass. 1989) (finding that "substantial

divergence of views on the proper measure of damages between" parties and proposed intervenor "necessarily renders the formers' representation of the latter inadequate"). Viewing this case as a whole, Defendants do not adequately protect Proposed Intervenors' interests.

## II.     Alternatively, the Court Should Grant Permissive Intervention

Should the Court decline intervention as of right, Proposed Intervenors request that the Court exercise its discretion to permit intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). That Rule permits courts to allow a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact." In exercising that discretion, "the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Courts can otherwise "consider almost any factor rationally relevant" and enjoy "very broad discretion." *Daggett*, 172 F.3d at 113. One such factor is whether "the applicants may be helpful in fully developing the case." *Id.*

Proposed Intervenors meet the two requirements stated in the rule. Any claim or defense they raise would be inextricably interwoven with the facts of the main action and, since the litigation is in its early stages, intervention poses no prejudice to the parties. Additionally, as many of the Proposed Intervenors, and their constituents, attended hearings and otherwise participated during the City Council's 2022 mapping process, the Proposed Intervenors are positioned to help the Court develop a much more comprehensive record. *See* Sullivan Decl. at ¶¶ 9, 12. Proposed Intervenors are also represented by counsel with significant expertise in voting rights cases,[8] and are willing and able to present evidence about racially polarized voting and its impact on Boston's communities of color, topics that have so far been missing from this case.

---

[8] *See, e.g.*, *Huot v. City of Lowell*, 280 F. Supp. 3d 228 (D. Mass. 2017); *Worcester Interfaith v. City of Worcester*, 4:21-cv-40015-TSH (D. Mass. 2021).

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that the Court grant their Motion for Leave to Intervene and allow them to intervene as of right in this matter pursuant to Rule 24(a), or, alternatively that the Court exercise its discretion to permit them to intervene pursuant to Rule 24(b).

Dated: May 17, 2023                              Respectfully submitted,


                                                 /s/     *Oren M. Sellstrom*
                                                 Oren M. Sellstrom, Esq. (BBO #569045)
                                                 Jacob M. Love, Esq. (BBO #699613)
                                                 Lawyers for Civil Rights
                                                 61 Batterymarch Street, 5th Floor
                                                 Boston, MA 02110
                                                 Tel: 617-988-0624
                                                 jlove@lawyersforcivilrights.org
                                                 osellstrom@lawyersforcivilrights.org
                                                 Attorneys for Proposed Intervenors

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)**

The undersigned counsel for Proposed Intervenors hereby certifies that they have conferred in good faith with counsel for the Plaintiffs and Defendants by email on May 17, 2023, to narrow or resolve the issues raised in this motion, specifically relating to the request to intervene in this matter.  Plaintiffs have indicated that they oppose this Motion.  Defendants have not stated a position on this Motion.

*/s/ Oren M. Sellstrom*

**CERTIFICATION OF SERVICE**

I hereby certify that, on May 17, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by email to all parties by operation of this Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Oren M. Sellstrom*

15