# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RASHEED WALTERS, et al.,

    Plaintiffs,

    v.

THE BOSTON CITY COUNCIL, et al.

    Defendants.

C.A. No.: 1:22-cv-12048-PBS

## DECLARATION OF TANISHA M. SULLIVAN, ESQ. ON BEHALF OF THE NAACP BOSTON BRANCH

I, Tanisha M. Sullivan, Esq., do declare and state as follows:

1. I am currently serving as the President of the Boston Branch of the National Association for the Advancement of Colored People (the "NAACP Boston Branch" or "NAACP").

2. The NAACP is a national organization that works to ensure the political, educational, social and economic equality and rights of all persons, and to eliminate racial hatred and racial discrimination throughout the United States.

3. The NAACP Boston Branch advocates for those values in the City of Boston. Founded in 1911, it is the first chartered branch of the national NAACP.

4. The NAACP Boston Branch has been a leading entity in the NAACP's one hundred plus year history, generating court decisions, legislation, and programs that have improved the lives of people of color.

5. As a community-driven organization, the NAACP Boston Branch represents the interests of all people and voters of color in Greater Boston. It is also a membership organization with hundreds of active, dues-paying members throughout Boston.

6. NAACP Boston Branch members are registered to vote and participate in local elections across Boston.

7. The NAACP Boston Branch has members in District 3 and District 4 as drawn in the 2022 Map.

8. The NAACP Boston Branch has a long history of redistricting advocacy in Boston to ensure equitable representation at the community level.

9. The NAACP Boston Branch, and some of its Members, attended hearings and actively participated in the City Council's redistricting process in 2022.

10. During that process, the Boston City Council held numerous public hearings, heard hours of testimony from Boston residents and community advocates, and received input from experts.

11. Members of the Boston City Council also actively sought, and received, input from advocacy organizations. The NAACP Boston Branch is one such organization that City Councilors actively consulted with.

12. The NAACP Boston Branch worked closely with the Proposed Intervenors during the 2022 redistricting process. The Proposed Intervenors frequently met to strategize. On information and belief, all of the Proposed Intervenors expended time and resources throughout that process to advocate for the equitable representation of voters of color in Boston.

13. That City Council's 2022 redistricting process produced a redistricting map (the "2022 Map"), enacted in November last year, which is now the subject of this litigation.

14. Although the 2022 Map did not reflect all of the goals that the NAACP and Proposed Intervenors advocated for, the Proposed Intervenors ultimately supported the passage of the 2022 Map because it was the product of an open, deliberative, community process.

15. After this case was removed to this Court, the NAACP and other local community groups sought, and received, permission to participate as *amici curiae*. The *amici* filed an amicus brief in defense of the 2022 Map.

16. At that time, the NAACP Boston Branch and other *amici* believed that the City of Boston would adequately represent the *amici*'s interests in the case.

17. That belief began to erode when the Court held its preliminary injunction hearing in April.

18. NAACP representatives and members sat through the preliminary injunction hearing in April and became alarmed at the lack of defense. During the preliminary injunction hearing, Defendants' attorneys allowed the Plaintiffs to build a substantial record through witness testimony, failed to call a single fact witness to counter the Plaintiffs' allegations, and essentially rested their defense on the testimony of one expert and a report from the City Councilor chairing the Redistricting Committee.

19. At the close of that hearing, the NAACP Boston Branch and other *amici* thought that the Defendants had presented a woefully insufficient defense, failing to respond to many of the Plaintiffs' allegations and key arguments. That position was confirmed on May 8, 2023, when this Court issued an Order preliminarily enjoining the 2022 Map.

20. Since the issuance of the Order, our interests have diverged even further.

21. Within days of the Court's Order, Boston Mayor Michelle Wu released a redistricting map proposal (the "Mayor's Map") late on Friday, May 12, 2023.

22. The Mayor's Map was released without consulting the NAACP Boston Branch or, on information and belief, any of the other Proposed Intervenors.

23. The Mayor's Map was released without holding any hearings or receiving public input.

24. The City has tried to suppress and discourage input, including feedback from those representing the interests of Black voters and communities of color.

25. Since releasing the Mayor's Map late on Friday, May 12, the City has called for the City Council to enact the Mayor's Map on Wednesday, May 17. *See* City of Boston Letter attached hereto as Exhibit 1. Based on my discussions with City officials, I understand that City Hall's directive to the City Council is that the Mayor's Map must be passed now without any modifications because the timing is too tight to allow for changes. Apparently, if the Map is not passed imminently, the November 2023 election cycle will need to be delayed. However, scheduling this matter for a hearing on Wednesday, May 17 leaves virtually no time for the public to vet or respond to the Mayor's Map.

26. Black voters, including NAACP members, are alarmed by the lack of transparency surrounding the process so far undertaken to draw and enact the Mayor's Map.

27. Based on my discussions with City officials, I understand that Defendants have likely been consulting with the Plaintiffs and/or their representatives to secure their approval before the release of the Mayor's Map. This is of grave concerns to the NAACP because we understood the Court's Order to place the redistricting process back in the democratic process. The fact that the City is now apparently engaging in "settlement" discussions with the Plaintiffs is alarming to us, and further solidifies our belief that the City does not adequately represent our interests. The NAACP and, on information and belief, all of the Proposed Intervenors, are opposed to settling this matter, especially without their input being considered.

28. Black voters, including NAACP members, are alarmed by the substance of the Mayor's Map.

29. In just 72 hours, NAACP members and allies have identified flaws in the Mayor's Map, particularly that it divides numerous neighborhoods populated primarily by Black voters and other voters of color such as Jamaica Plain.

30. I understand that the Mayor's Map would also displace approximately 150,000 voters from their districts.

31. I understand that the Mayor's Map would move approximately 50 precincts.

32. The Mayor's Map alters the design, construction, and make-up of nearly every district.

33. In just 72 hours, NAACP members have observed that the Mayor's Map preserves traditionally white neighborhoods in areas such as South Boston, but it does so at the expense of communities of color, particularly Black voters.

34. Although the Court's preliminary injunction Order found a likely Equal Protection violation based on the record before it, the NAACP does not believe that this means that the City can ignore requirements of the Voting Rights Act in re-fashioning a new map now. However, actions on the part of City indicate that this is their view. This, coupled with the City's anemic defense of the original map, have convinced the NAACP that the City does not adequately represent our interests or those of our members, in this lawsuit. The NAACP would prefer to make as few changes to the 2022 Map as possible, but the City is proposing dramatic changes. On information and belief, the Proposed Intervenors share all of these views.

35. The changes in the Mayor's Map harm Black voters and other voters of color and are adverse to the NAACP's interests. On information and belief, the changes in the Mayor's Map are also adverse to all of the Proposed Intervenors' interests.

36. The NAACP and, on information and belief all of the proposed intervenors, oppose the Mayor's Map not only because it harms their constituents, but also because it has been developed behind closed doors without community input.

37. In any redistricting process or court case, the NAACP seeks to ensure that District 4 remains a majority-Black district. The NAACP and, on information and belief, all of the Proposed Intervenors, want to defend the lines of the 2022 Map they advocated for, the lines of the districts in which their members and constituents live, and ensure equitable representation for voters of color in Boston.

38. The NAACP seeks to intervene to protect the integrity of our communities and to assert our well-established voting rights.

Signed:     */s/ Tanisha Sullivan*                    Dated: May 17, 2023

# EXHIBIT 1



City of Boston, Massachusetts
Office of the Mayor
**MICHELLE WU**

May 12, 2023

**TO THE CITY COUNCIL**

Dear Councilors:

On May 8, 2023, the United States District Court for the District of Massachusetts issued an opinion enjoining the City from using the recently approved City Council district map. To help ensure a swift and smooth resolution to redistricting, I hereby transmit for your consideration a Boston City Council District map that enhances opportunities for voters and their preferences to be reflected and represented on the City Council and prioritizes placing whole neighborhoods within individual districts. In drawing this proposed map, we have carefully reviewed and considered the decision in *Case No. 1:22-cv-12048: Rasheed Walters, et al vs. Boston City Council, et al.* and our City's legal obligations under the Voting Rights Act of 1965.

As Mayor, I believe that putting whole neighborhoods in single council districts encourages neighborhood organizing and civic engagement. With that goal in mind, our proposed map unifies neighborhoods across the City. The result is a City Council district map that unifies communities of interest within districts and attempts, as best as possible, to reflect how residents experience the City in their daily lives. We believe that better aligning our neighborhoods within district maps will strengthen the Council and the City that we serve.

I want to acknowledge the hard work from so many community organizations, neighborhood leaders, voting activists and advocates, who have worked hard to set the best possible course for our City's future. Your shared wisdom is reflected in the proposed map and I hope that everyone who reviews it sees your own community and input reflected. I know my colleagues on the City Council and I will welcome further feedback at their sessions in the coming days.

As we wrote to this Honorable Body earlier in the week, time is of the essence. The timelines reflected in the Home Rule Petition proposed on Wednesday, May 10, assume that a new map will be passed by the City Council on or before May 30, 2023. This date would permit the Elections Department to conduct a signature petition process, certify signatures, and print and mail ballots in time to conduct the September 12th Preliminary Election in an orderly fashion

that provides our community with a meaningful opportunity to participate in this important election.

This proposed map unifies neighborhoods within council districts and is one that I am prepared to sign. Whether this map or another amended by the Council, I urge your Honorable Body to take action on a redistricting map at the next Council meeting on Wednesday, May 17, in order for sufficient review and potential rejection or amendments before the May 30 deadline. The City's Law Department and our outside redistricting counsel will be available for consultation as you continue your deliberation and prepare for passage.

Sincerely,

Michelle Wu
Mayor of Boston