UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RASHEED WALTERS, RITA DIXON, SHIRLEY SHILLINGFORD, MAUREEN FEENEY, PHYLLIS CORBITT, Individually and as President of the Massachusetts Union of Public Housing Tenants, THE SOUTH BOSTON CITIZENS ASSOCIATION, MARTIN F. MCDONOUGH AMERICAN LEGION POST, ST. VINCENT'S LOWER END NEIGHBORHOOD ASSOCIATION, and OLD COLONY TENANT ASSOCIATION,  GLADYS BRUNO, ZHENG HUANHUA, CARMEN LUISA GARCIA TERRERO, CARMEN GARCIA-ROSARIO, and ELEANOR KASPER,<br><br>        Plaintiffs,<br><br>v.<br><br>THE CITY OF BOSTON, MICHELLE WU, in her official capacity of the Mayor of the City of Boston, ENEIDA TAVARES, in her official capacity as Commissioner of the Boston Election Commission, and THE BOSTON CITY COUNCIL,<br><br>        Defendants. | Civil Action No. 1:22cv012048-PBS |

## PLAINTIFFS' PETITION FOR FEES AND COSTS

Now Come the Plaintiffs and respectfully submit this Fee Petition for the award of attorneys' fees pursuant to 42 U.S.C. §§ 1983, 1988 and 52 U.S.C. § 10310(e).  Both 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e) permits this Honorable Court to award reasonable attorneys' fees to Plaintiffs in this matter.  Defendants City of Boston, Michelle Wu, Eneida Tavares, and the Boston City Council (collectively "Defendants") do not challenge that Plaintiffs are entitled to attorneys' fees as prevailing parties, but counsel for the Defendants has reserved the right to challenge the amount of attorney's fees and/or costs awarded.

I.      **42 U.S.C. § 1988 – The Civil Rights Attorney's Fees Award Act of 1976**

The Civil Rights Attorney's Fees Award Act of 1976 codified at 42 U.S.C. § 1988 provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of section . . . 1983 . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

"The district court's 'broad discretion' to award fees to 'prevailing parties' under Section(s) 1988, [] must be guided by the statutory presumption that fees should be awarded to successful plaintiffs absent unusual situations." Williams v. Hanover Hous. Auth., 113 F.3d 1294, 1300 (1st Cir.1997) (internal citation omitted) citing S. Rep. No. 94-1011 (1976), reprinted in 1976 U.S.C.C.A.N. 5908.

As the First Circuit has held, fee awards under Section 1988 are virtually obligatory:

> Indeed, we have consistently held that despite the permissive phrasing of the Fees Act, "[fee] awards in favor of prevailing civil rights plaintiffs are **virtually obligatory**." Poy v. Boutselis, 352 F.3d 479, 487 (1st Cir. 2003) (quoting Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 293 (1st Cir. 2001)). Thus, "the burden is on the defendant to show that unusual conditions would make an award unjust or inappropriate." Cofield, 215 F.3d at 171 (citing Herrington v. County of Sonoma, 883 F.2d 739, 744 (9th Cir. 1989)).

Nazario v. Morris Rodríguez, 554 F.3d 196, 200 (1st Cir. 2009) (emphasis added). Although Defendants have conceded that Plaintiffs have "prevailing party" status for the purposes of a fee award under Section 1988, Plaintiffs will elaborate on the specifics of "prevailing party" status in the First Circuit for the Court's convenience.

"Prevailing party" status for the purpose of Sections 1983 and 1988 is not necessarily equivalent to "success" in the form of judgment on any or all federal claims. Rather, a party "prevails" if its prosecution of an action results in a judicial alteration of the parties' relationship. Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001); Hensley v. Eckerhart, 461 U.S.424, 103 S.Ct. 1933 (1983); Carston v. County of Cook, 962 F.2d 749 (7th Cir.

1992).  "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v.Hobby, 506 U.S. 103, 111-12 (1992).

The First Circuit has held that in some cases, success on a preliminary injunction may not confer "prevailing party" status, but only if that preliminary injunction or temporary restraining order was "hasty and abbreviated" and the trial court performed "no thorough examination of the merits of this issue prior to the issuance of the TRO".  Sinapi v. R.I. Bd. of Bar Examiners, 910 F.3d 544 (1st Cir. 2018).  In Tri-City Community Action Prog. v. City of Malden, 680 F. Supp. 2d 306 (D.Mass 2010), the Honorable Nancy Gertner awarded attorneys' fees to the party that prevailed on a preliminary injunction under the fee shifting provision of the Fair Housing Act Amendments of 1988 ("FHAA"), 42 U.S.C. § 3613(c)(2), holding as follows:

> Plaintiffs here also satisfy Buckhannon. First, as the cases from the courts of appeals make clear, a preliminary injunction is a court order carrying a judicial imprimatur ever bit as compelling as that of a consent decree (the example cited by the Court in Buckhannon). And while there may be preliminary injunctions that are equivocal, this was not one of them. I explicitly found that the motion "me[t] the standards of Rule 65, namely the likelihood of success on the merits." Electronic Order (January 31, 2007). See Dubuc v. Green Oak Township, 312 F.3d 736, 753 (6th Cir. 2002) (stating that a preliminary injunction provides prevailing party status only "if the injunction represents 'an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff'" (quoting Webster v. Sowders, 846 F.2d 1032, 1036 (6th Cir. 1988))).  Second, my order caused a material change in the legal relationship between the parties. It contrasts sharply with those cases in which a preliminary injunction grants only interim relief that preserves the status quo pendente lite until the court can resolve the merits. See, e.g., N. Cheyenne Tribe v. Jackson, 433 F.3d 1083, 1086-87 (8th Cir. 2006) (Native American tribes were not prevailing parties by virtue of a preliminary injunction barring HUD from providing funds for construction of a shooting range near a spiritual site simply because the government withdrew the grant after the injunction issued). This injunction enjoined the defendants "from interfering with or preventing Tri-City Community Action Program, Inc. from purchasing, occupying and carrying out modifications to the property at 115 Washington St. in Malden set out in plaintiff's permit application submitted on 8/30/06 to the Malden Planning Board." Electronic Order (January 31, 2007). Before it, the City retained full authority under local law to deny Tri-CAP the building permit needed for construction, and it did. Afterwards it could not; the order effectively set aside the standard permit approval process. Put another way, but for the preliminary injunction, Tri-CAP could

> not legally have completed the modifications, the three John Does and one Jane Doe would not have been able to live in the refurbished rooming house, and the case would not have been rendered moot.

Tri-City Community Action Prog., 680 F. Supp. 2d 314-315 (emphases original); see also Baptista v. Lyons, 440 F. Supp. 3d. 42, 47 (D. Mass. 2020) (Saris, D.J.) ("Several circuit courts have held that a party is a prevailing party if it 'secures a preliminary judgment based on a judicial judgment of the likelihood of success on the merits, and the passage of time together with that injunction, provides the party with all the relief it has ever sought.'"). In Baptista, Your Honor distilled the issue to "whether the Court's orders constituted 'judicial imprimatur' by providing a 'judgment on the merits.'" Baptista, 440 F. Supp. 3d. at 48.

In the case at bar, this Honorable Court undertook lengthy and involved hearings including many witnesses and exhibits over the period of several days, resulting in this Honorable Court's meticulous and thorough 43 page decision (the "Decision") in which Your Honor found plainly that "Plaintiffs have demonstrated a likelihood of success in showing that race played a predominant role in the City Council's redrawing of Districts 3 and 4 in the enacted map, and Defendants have not demonstrated that the enacted redistricting map is narrowly tailored to achieve a compelling interest." Decision at 1-2. Your Honor struck down the redistricting map and stated "[t]he ball is back in the City Council's court." Decision at 2. Your Honor also found that "[r]equiring Plaintiffs to vote under a redistricting map that violates the Equal Protection Clause constitutes irreparable harm." Decision at 36.

In effect, Your Honor's Decision to allow Plaintiffs' Preliminary Injunction forever destroyed the redistricting map passed by Defendants and objected to by the Plaintiffs. The Decision required the City Council to go back to the drawing board and decide on a map which satisfied both the City Charter and the Constitution. The City Council then did exactly as the Court ordered and created a new map free from Constitutional defects on May 26, 2023.

Your Honor's Decision ended the matter for all intents and purposes, and carried the "judicial imprimatur" of a "judgment on the merits" and provided Plaintiffs with all the relief they ever sought. *See also, e.g.,* Veasey v. Abbott, 13 F.4th 362, 369 (5th Cir. 2021) ("Accordingly, we agree with the district court that the interim order alone is enough to confer prevailing party status on Plaintiffs. The interim order was judicially sanctioned relief, ordered by the district court at the directive of this court, that materially altered the legal relationship between the parties and directly benefited Plaintiffs during the November 2016 elections. That cannot be undone—the November 2016 elections have come and gone—and the merits ruling on Plaintiffs' discriminatory effects claim has not been disturbed."). For these reasons, Plaintiffs respectfully request that this Honorable Court grant reasonable attorney's fees under 42 U.S.C. § 1988.

II.     **52 U.S.C. § 10310(e)**

52 U.S.C. § 10310(e) provides a separate means of awarding attorneys' fees and costs that specifically applies to the Fourteenth Amendment and voting rights cases:

> In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs.

52 U.S.C. § 10310(e). Section 10310(e) specifically allows for not only attorney's fees but also "other reasonable litigation expenses" as part of the costs. There does not appear to be any case law in the First Circuit or the District Courts thereof, but other Circuit Courts have essentially held that 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e) are functionally the same and identically construed. *See* Brandon v. Guilford Cnty. Bd. of Elections, 921 F.3d 194 (4th Cir. 2019) ("Because the language of § 1988 and § 10310(e) are 'phrased in identical terms,' we apply 'the same rule of decision under both of them.'") (citation omitted); Veasey v. Abbott, 13 F.4th 362, 368 (5th Cir. 2021) ("These provisions are 'identically construed' because they share similar 'language and purpose.'").

Plaintiffs are entitled to attorney's fees under 52 U.S.C. § 10310(e) because this Honorable Court clearly found in favor of the Plaintiffs on their Equal Protection claims under the Fourteenth Amendment.

### III. Voting Rights Act and Open Meeting Law Claims

As discussed hereinabove, this Honorable Court found for the Plaintiffs on their Equal Protection claim under the Fourteenth Amendment, but did not find that Plaintiffs established a likelihood of success on the merits of their Voting Rights Act ("VRA") and Open Meeting Law ("OML") claims. However, even though Plaintiffs did not succeed on their VRA and OML claims, Plaintiffs are still entitled to their reasonable attorney's fees in litigating those claims as they share a common core of facts with Plaintiffs' successful Equal Protection claim. In Hensley v. Eckerhart, 461 U.S. 424 (1983), the Supreme Court held:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. See Davis v. County of Los Angeles, 8 E.P.D. ¶ 9444, at 5049 (CD Cal. 1974). Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.
>
> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rates may be an excessive amount.

Hensley, 461 U.S. at 435-36 (footnote omitted); see also Garrity v. Sununu, 752 F.2d 727 (1984) ("Where, as here, plaintiffs have won a federal claim for which attorneys' fees are allowed to a

prevailing party, the question becomes whether the claims on which they lost in the same suit were unrelated to the successful ones (in which event no fees may be awarded for work on the unsuccessful claims), or whether, instead, the losing claims included 'a common core of facts,' or were 'based on related legal theories,' linking them to the successful claim.") *citing* Hensley, *supra*.

Plaintiffs' claims for violation of the VRA and the OML are inextricably intertwined with their successful Equal Protection claim. The work of Plaintiffs' counsel throughout the litigation has been a three-pronged attack, with each prong emanating from a common core of facts, i.e., that Defendants sought to push through a redistricting map that was unconstitutionally predicated on racial considerations in violation of the Fourteenth Amendment and the VRA, and that Defendants sought to do so in secretive meetings to avoid public scrutiny in violation of the OML.

Moreover, Plaintiffs' counsel humbly suggests to this Honorable Court that they "obtained excellent results" for the Plaintiffs worthy of a "fully compensatory fee".

## IV. Lodestar Analysis

Upon finding that a Plaintiff is entitled to attorney's fees as a prevailing party, "[n]ormally, a district court begins with a lodestar analysis, because failure to conduct such an undertaking 'creates a substantial burden upon the district court to account for its actions.'") De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009) (citation omitted). "The lodestar is determined by multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." Id. The base figure may then be adjusted "based on several different factors, including the results obtained." Id.

### A. Plaintiffs' Counsels' Hours and Rates Are Reasonable

Plaintiffs' Counsels' hours spent on this litigation are documented on timesheets showing entries for work performed to 6 minute increments. Each of these timesheets is accompanied by an affidavit from the relevant attorney. Exhibit A – Affidavit of Paul Gannon; Exhibit B – Affidavit of

7

Glen Hannington; Exhibit C – Affidavit of Frederick Dashiell. These timesheets, certified by affidavit, are prima facie evidence in support of Plaintiffs' requested award of attorney's fees and costs. *See, e.g.* Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 297 (1st Cir. 2001).

Attorney Gannon respectfully requests that this Honorable Court order the payment of his attorneys' fees of $113,820.00, which is 162.6 hours at $700 per hour. Exhibit A. Attorney Gannon further requests reasonable litigation expenses in the amount of $7,986.47. Id. Attorney Hannington requests attorney's fees of $175,420.00, which is 250.6 hours at $700 per hour. Exhibit B. Attorney Hannington is not claiming any litigation expenses. Attorney Dashiell requests $153,650.00 in attorney's fees, which is 219.50 hours at $700 per hour. Exhibit C. Attorney Dashiell further requests reasonable litigation expenses of $573.93.

In total, Plaintiffs seeks remuneration for 632.7 hours work at $700 per hour for a total of $442,890.00. Plaintiffs further seek reasonable litigation expenses of $8,560.40. The total requested for all attorneys' fees and expenses is therefore $451,450.40.

Numerous other cases of this magnitude command significantly higher attorney fee awards, such as Veasey v. Abbott, *supra* ($6,790,333.31 in total attorney's fees), Edmo v. Idaho Dept. of Correction, Case No. 1:17-cv-00151-BLW (D. Idaho 2022) ($2,586,048.80 in attorney fees and $45,544.20 in litigation expenses); Fish v. Kobach, Case No. 16-2105-JAR-JPO (D. Kan. 2021) ($1,075,000.00 in fees and $350,000.00 in expenses); Tennessee State Conference of the NAACP v. Hargett, Case Nos. 3:19-cv-00365; 3:19-cv-00385 (M.D. Tenn. 2021) ($786,089.86 in fees and $9,202.53 in expenses); Muehe v. City of Boston, 580 F. Supp. 3d 80 (D. Mass. 2021) ($674,487.38 in fees and $5,533.18 in expenses).

Plaintiffs' counsel has also underbilled by not including numerous hours spent by non-core attorneys and other support staff in their offices. The requested rate of $700.00 is eminently reasonable for this type of complex litigation specifically in light of recent inflation.

According to the Wolters Kluwer 2020 Real Rate Report, which is based on data from 2019, the rate for litigation partners in Boston was $410/hour for the first quartile, $650 for the median and $833 for the third quartile. Adjusted for inflation from 2019 dollars to 2023 dollars, these numbers equate to $489/hour for the first quartile, $775 for the median and $994 for the third quartile. https://data.bls.gov/cgi-bin/cpicalc.pl. The Wolters Kluwer Real Rate Report is often relied upon by courts to set reasonable fees. *See* Tyler v. Michaels Stores, Inc., 150 F. Supp. 3d 53, 69-70 (D. Mass. 2015); *see also* Retta v. Millennium Prods., Inc., No. 2:15-cv-1801-PSG-AJWx, 2017 WL 5479637, at *12 (C.D. Cal. Aug. 22, 2017) ("Courts have found that the Real Rate Report is 'a much better reflection of true market rates than self-reported rates in all practice areas.'") (collecting cases) (internal citation omitted). *See also* Muehe, *supra* at 86-87 (using the Real Rate Report and finding that a request for an hourly rate between the median and the third quartile was reasonable).

The $700 per hour sought by Plaintiffs' counsel is below even the 2023 median rates for experienced litigation attorneys in Boston. And Plaintiffs' counsel are certainly experienced litigators. Attorney Gannon is a former State Representative and accomplished litigator whose legal and political backgrounds brought immense value to the Plaintiffs. Attorney Hannington has 51 years of experience in the courts, including 25 years as Clerk-Magistrate in the Boston Municipal Court. Attorney Dashiell also has more than 40 years of litigation experience, including as an Assistant U.S. Attorney, Assistant Regional Attorney at the US Department of Labor Solicitor's Office.

### B. Attorney's Fees of this Type Incentivize the Preservation of Civil Rights

As discussed in Riverside v. Rivera, 477 U.S. 561 (1986), the purpose of the enactment of Section 1988 was to incentivize attorneys to bring civil rights actions. Rivera, 477 U.S. at 578 ("Congress recognized that private sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to

9

compensate lawyers for all time reasonably expended on a case."). In this case, Plaintiff's counsel prevented the use of an unconstitutional voting map from being implemented which would have violated the Constitutional rights of the voters of Boston. This type of result is exactly why Section 1988 was enacted, and for that reason, Plaintiffs' counsel should be compensated for all time expended on this matter.

## V.     Conclusion

For the reasons stated hereinabove, Plaintiffs respectfully request that this Honorable Court order the payment of attorney's fees in the amount of $442,890.00 and reasonable litigation expenses in the amount of $8,560.40.

Respectfully Submitted,
Plaintiffs,
By their Attorneys,

/s/ Paul Gannon, Esq.
Paul Gannon, Esquire
Law Office of Paul Gannon, P.C.
546 E. Broadway
South Boston, MA 02127
(617) 269-1993
BBO# 548865
pgannon@paulgannonlaw.com

/s/ Glen Hannington
Glen Hannington, Esq.
LAW OFFICES OF GLEN HANNINGTON
Ten Post Office Square, 8th Floor South
Boston, MA  02109
TEL#: (617) 725-2828
BBO#: 635925
glenhannington@aol.com

/s/ Frederick E. Dashiell
Frederick E. Dashiell, Esq.
Dashiell & Associates, P.C.
6 Codman Hill Avenue

Boston, Massachusetts 02124
Ph: (617) 590-5780 (Direct Line)
Fax: (972) 474-9171
BBO# 114520
fred.dashiell@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was filed through the ECF System and will be served upon the attorney of record for each party registered to receive electronic service on this the 4th day of August 2023.

/s/ Glen Hannington